**SUMMONS ISSUED**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 25 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DEBORAH STEVENS,

                    Plaintiff,

         -against-

ATLANTIC AUTOMOTIVE GROUP, INC., JACQUELINE
BRUCIA, BETH SHERIDAN, and JEFFREY PECK, as
aiders and abettors,

                 Defendants.
-------------------------------------------------------------------X

<u>COMPLAINT</u>

Jury Trial Demanded.

Docket No.: CV-13-3585
FEUERSTEIN, J

TOMLINSON, M

       Plaintiff, DEBORAH STEVENS, through her attorneys, LEEDS BROWN LAW, P.C., alleges

upon knowledge as to herself and her own actions, and upon information and belief as to all other

matters, as follows:

<u>JURISDICTION AND VENUE</u>

1.     This is a civil action based upon the defendants violations of the Americans with Disabilities

     Act, 42 U.S.C. § 12101, *et seq*; New York State Executive Law, Human Rights Law, § 290 *et*

     *seq*, as well as any other cause of action that can be inferred from the facts set forth herein.

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343.   The

     supplemental jurisdiction of the Court is invoked over state causes of action, pursuant to 28

     U.S.C. § 1367.

3.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or

     omissions giving rise to the action, including the unlawful employment practices alleged

     herein, occurred in this district.

ORIGINAL

1

4.    The jurisdictional prerequisites to this lawsuit have been satisfied.  Specifically, Plaintiff filed

an administrative complaint with the Equal Employment Opportunity Commission, which was

cross-filed with the New York State Division of Human Rights ("NYSDHR"), and was issued a

Right to Sue letter, dated April 4, 2013.  Plaintiff commenced this action within ninety days of

the issuance of this Right to Sue letter.

## PARTIES

5.    Plaintiff, Deborah Stevens, is a former employee of Atlantic Automotive Group, Inc.  At all

times relevant to this action, Stevens was a resident of Nassau County, New York, and was an

"employee" as defined by all relevant statutes.

6.    Defendant, Atlantic Automotive Group, Inc. ("Atlantic"), is a business incorporated under the

laws of New York.  Atlantic purposefully engages in business in the State of New York, with at

least twenty automobile dealerships located in the Counties of Nassau and Suffolk.  At all

relevant times, Atlantic employed over 30 employees and was an employer as defined by all

relevant statutes.

7.    Defendant, Jacqueline Brucia, was and still is an employee of Atlantic and works in Suffolk

County.  At all relevant times, Brucia was a Controller employed by Atlantic.

2

8.      Defendant, Beth Sheridan, was and still is an employee of Atlantic and works in Nassau County.  At all relevant times, Sheridan was a Controller employed by Atlantic.

9.      Defendant, Jeffrey Peck, was and still is an employee of Atlantic and works in Suffolk County.  At all relevant times, Peck was a Human Resources Manager employed by Atlantic.

## FACTUAL BACKGROUND

10.     Atlantic first employed Stevens from January 2009 until June 2010.  Stevens was initially hired to be the Office Manager for Atlantic's Massapequa Nissan location.

11.     Stevens was assigned to Atlantic's Department of Motor Vehicles office in West Islip.  In this position, Stevens came to know Brucia.

12.     In June 2010, Stevens relocated to Florida and resigned from Atlantic.

13.     During a return trip to New York in October 2010, Stevens visited Atlantic's offices, where she met with some of her former co-workers, including Brucia.  During this visit, Brucia advised Stevens she needed a kidney transplant.

14.     Stevens told Brucia that she would be willing to donate her kidney.  Brucia declined, stating "you never know, I may have to take you up on that offer one day."

3

15. Shortly thereafter, Stevens moved back to New York and contacted Brucia to inquire about employment opportunities.

16. On November 28, 2010, Stevens was re-hired by Atlantic and was assigned to help Brucia with year-end clerical tasks.

17. In January 2011, Brucia's prospective kidney donor was declined for transplantation. Brucia asked Stevens if she would donate one of her kidneys. Stevens agreed.

18. After Stevens agreed to donate a kidney, in January 2011, Stevens was appointed as Brucia's assistant, and was assigned a private office. Stevens' work was frequently praised by Brucia and others during this period.

19. In February 2011, Stevens began the lengthy and painful processes of being tested for kidney compatibility, including a CT scan, blood work, EKG's, and other testing. It also required multiple trips to a doctor in Manhattan.

20. After medical testing revealed that Stevens' kidney was not a match, Stevens agreed to donate her kidney to the National Kidney Registry; in exchange, a matching kidney was to be provided to Brucia.

21. On August 10, 2011, Mrs. Stevens had her left kidney removed, resulting in a simultaneous donation of a kidney to Brucia.

4

22.     The medical procedure and its aftermath caused Stevens excruciating pain.

23.     Due to the removal of Stevens' left kidney, Stevens experiences numbness in her hip and lower
        extremities, digestive problems, frequent visits to the bathroom, bloating, extreme pain in her
        abdomen, gas pain, fatigue, decreased appetite, and difficulty sleeping.  Stevens is also unable
        to lift heavy objects.  Accordingly, Stevens is disabled within the meaning of the Americans
        with Disabilities Act, 42 U.S.C. § 12101, *et seq*, and the New York State Executive Law,
        Human Rights Law, § 290 *et seq.*

24.     Stevens did not hear from Brucia for three weeks after her operation, so she called Brucia to
        ask how she was feeling, discuss the progress of both of their recoveries.

25.     During the call, Stevens indicated that she was not feeling well.  Brucia expressed confusion
        about Stevens' slow recovery, stating that she knew other people who had recovered quickly.
        Brucia pressured Stevens to return to work prior to an appropriate recovery.

26.     On September 6, 2011, largely due to pressure from Brucia, Stevens returned to work.

27.     Thereafter, Brucia treated Stevens differently.  Whereas Brucia was complimentary toward
        Stevens prior to the surgery, following the surgery, she became hostile, curt, dismissive, and
        unnecessarily critical of her work performance.

5

28. On September 8, 2011, Stevens left work early due to extreme pain. Stevens told Chrystal Smalls (office manager) and Henrika (last name unknown) (payroll manger) that she needed to leave. Stevens also notified Brucia, who was working from home at the time, by leaving her multiple voicemails and e-mailing her that she needed to leave work early.

29. After Stevens returned home, Brucia called her and said, "Why aren't you at work? What are you doing? You cannot come and go, as you please." Stevens responded, "I'm not fully recovered. I don't feel well." Brucia stated "you are going to be at work tomorrow, right?"

30. From August 2011 to mid-October 2011, Brucia was recovering from her surgery, and she worked from home. During this time, she demanded that Stevens personally deliver to her heavy documents and other work materials from the office (e.g. month-end journals).

31. Due to extreme abdominal pain, and her doctor's orders that she not lift heavy objects, Stevens could not lift many of these materials. When Stevens asked Brucia for an accommodation that she not carry anything over 10 pounds, Brucia insisted that Stevens carry the materials anyway. Brucia did not provide an accommodation or engage in an interactive process.

32. When Brucia returned to work in mid-October, Brucia's harassment intensified. For example, without justification, Brucia frequently blamed Stevens for mistakes and berated her in front of co-workers and colleagues.

33.  Brucia gradually reduced Stevens' responsibilities and refused to let her leave her desk to use the restroom or for any other purpose without Brucia's prior permission.

34.  When Stevens told Brucia that her condition caused digestive problems that caused her to need to use the bathroom on short notice, Brucia responded that Stevens should take some bran or a laxative and get back to work.

35.  Following this conversation, Brucia continued to insist that Stevens request permission to use the bathroom, and on more than one occasion, Brucia denied or delayed giving Stevens permission. Brucia did not give a reasonable accommodation of allowing Stevens to use the bathroom without permission or engage in an interactive process.

36.  Additionally, Stevens physical conditions precluded her from sitting for long periods of time, as it was necessary for her to take short walks in order to aid her digestion and alleviate pain symptoms. Stevens asked Brucia for permission to leave her desk in order to occasionally walk, but instead of providing a reasonable accommodation or engaging in an interactive process, Brucia berated Stevens, telling her, "I don't care; sounds like a personal problem. I do not care!" Stevens cried in Brucia's office and Brucia kicked her out.

37.  On December 31, 2011, Stevens complained to Jeffrey Peck ("Peck"), from Atlantic's Human Resources department. Stevens complained about Brucia's treatment of her, including Brucia's failure to provide her with a reasonable accommodation.

7

38.    Peck confirmed that other employees told him that Brucia was harassing Stevens.

39.    On January 3, 2012, Stevens attended a meeting with Brucia and Peck where Brucia berated Stevens and baselessly criticized her work performance.    Stevens again discussed the aforementioned conduct, including her need for reasonable accommodations. Stevens was then asked to leave the room while Brucia and Peck met privately. When Stevens returned, Peck told Stevens that he felt the situation was "too personal" and he would discuss "options" for Stevens after she completed work that Brucia needed her to complete.

40.    Peck later told Stevens that Brucia has been working for Atlantic for a long time so nothing was going to be done to Brucia, but Stevens would be transferred to another location.  Stevens expressed her desire to continue working at her present location – albeit with a reasonable accommodation and without Brucia's harassment.  Peck responded that everyone knew that Stevens did a great job and no one was questioning her ability, but Brucia had been with Atlantic a long time, "so that's that." Peck told Stevens, "let's just get the year-end work done, then we'll talk."

41.    On February 6, 2012, Stevens was transferred to Atlantic's Hempstead location, substantially increasing her commuting time. The transfer was an adverse action in that it resulted in a material alteration of Stevens' job duties, primarily relegating her to data entry, whereas before, Stevens had greater responsibilities relating to bookkeeping, auditing, business development, and other tasks.    Stevens' work schedule was altered, she no longer had the opportunity to

8

work overtime, resulting in loss of income, and she was assigned to a cubicle instead of an office.

42.     Additionally, Sheridan routinely berated Stevens for relatively minor performance-related issues. When Stevens began to become emotional, Sheridan accused her of "acting," saying, "here come the fake tears. . . . We all know you don't want to be here."

43.     In March 2012, Sheridan denied Stevens request to take off from work for her six-month checkup at the transplant center at New York Presbyterian Hospital. Sheridan did not provide an accommodation for her to attend this appointment or engage in an interactive process relating to same.

44.     On March 5, 2012, Stevens' attorneys sent Atlantic a letter on her behalf that Atlantic appeared to be violating the ADA and NYSDHR.

45.     On April 11, 2012, Atlantic terminated Stevens' employment pretextually claiming her termination was due to performance deficiencies. Atlantic never issued Stevens any written warning, nor had she been placed on any performance improvement plan.

46.     On April 20, 2012, Stevens filed a complaint of discrimination with the New York State Division of Human Rights, and was assigned Case Number 10154681.

47.     On October 18, 2012, the NYSDHR determined that "probable cause" exists to believe Defendants had engaged in the unlawful discriminatory practice complained of. Thereafter, at Stevens' request, Stevens' complaint was dismissed for administrative convenience so that Stevens may bring the instant action.

## CLAIMS FOR RELIEF

48.     Atlantic has taken adverse action and/or maintained an atmosphere of adverse action against Plaintiff and/or created a hostile work environment, based in part, on Plaintiff's disability, record of a disability and/or perceived disability, and in retaliation for Plaintiff's requests for reasonable accommodations and/or her opposition to discriminatory practices, in violation of the ADA and NYSHRL. Atlantic also failed to provide reasonable accommodations and failed to engage in an interactive process with respect thereto.

49.     The individual defendants aided and abetted the aforementioned acts by personally acting and/or by failing to prevent violations of law.

**WHEREFORE**, Plaintiff demands judgment for all compensatory, emotional, physical, liquidated, and punitive damages (where applicable), lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled as this Court may deem just and proper. Plaintiff demands a trial by jury.

Dated:    Carle Place, New York
          June 24, 2013

                                      LEEDS BROWN LAW, P.C.
                                        Attorneys for Plaintiff
                                        One Old Country Road, Suite 347
                                        Carle Place, New York 11514
                                        (516) 873-9550

                                        By: _____
                                              RICK OSTROVE
                                            LENARD LEEDS

11